## IN THE SUPREME COURT OF MISSISSIPPI
## NO. 2000-KA-00009-SCT

*ERIC F. AGNEW*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 08/31/1999 |
| TRIAL JUDGE: | HON. THOMAS J. GARDNER, III |
| COURT FROM WHICH APPEALED: | LEE COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | ROBERT SNEED LAHER |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY:  JEAN SMITH VAUGHAN |
| DISTRICT ATTORNEY: | JOHN RICHARD YOUNG |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 04/19/2001 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 5/10/2001 |

### BEFORE BANKS, P.J., MILLS AND DIAZ, JJ.

### MILLS, JUSTICE, FOR THE COURT:

¶1. Eric F. Agnew was indicted and charged with the murder of Kristy High on April 28, 1998. After a two-day trial in the Circuit Court of Lee County, the jury found Agnew guilty of murder, and he was sentenced to a term of life imprisonment. He filed a motion for a j.n.o.v., or in the alternative, a new trial. The circuit court denied Agnew's motion. Aggrieved, Agnew appealed to this Court. Finding that the trial judge did not abuse his discretion by refusing to grant a manslaughter instruction or by denying Agnew's motion in limine to exclude the murder weapon, we affirm.

## FACTS

¶2. Eric Agnew and Kristy High began dating in their last year of high school. The record is not clear as to exactly how long they dated, but it appears to have been roughly four to five years. Kristy and Agnew had one daughter, Kyra, but the two never married. Kristy and Kyra shared an apartment in Tupelo with Kristy's twin sister Misty.

¶3. On the 27th of February, 1998, Agnew spent the day with Kristy and Misty. It was Misty's testimony that Agnew had acted strangely throughout the day. Misty testified that as they drove to eat lunch, Agnew cried for no apparent reason. While she and Kristy ate lunch, Agnew would not eat, but instead stayed outside and smoked a cigarette. Additionally, she stated that Kristy offered a greeting card to Agnew in an effort to encourage their relationship and he refused to accept it. Yet, at one point in the afternoon, Misty returned to her car to find Kristy and Agnew in an apparently intimate position.

¶4. In the evening of that same date, Misty went to bed around 9:30. She left Kristy and Agnew watching

television. Around 10:30 she was awakened by Kristy's screaming. She jumped out of her bed and ran into the living room. She saw Agnew standing over Kristy, who was sitting on the couch. Misty believed Agnew was only shaking Kristy. However, when Misty approached the two of them, Agnew turned to her and stated that he would "stab her too." She was surprised because at that point she did not realize that Kristy had been stabbed at all. Kristy and Misty approached the door in an effort to leave the apartment, but Agnew blocked the doorway. As Kristy turned away from him, Misty saw Agnew stab Kristy in the back. Agnew then left the apartment. Kristy followed behind him. Misty was the last person out of the door.

¶5. Kristy collapsed in the parking lot. Misty went to the apartment of an upstairs neighbor to call the police and returned to the parking lot to wait beside Kristy. A crowd had already begun to gather when the first police car arrived. Misty recounted the event to the first officer on the scene. Misty saw Agnew while she was speaking to the officer. She pointed him out to the officer and informed him that Agnew was the person who had stabbed her sister. The officer immediately handcuffed Agnew and placed him in the back of the police car. An ambulance arrived and transported Kristy to the hospital where she later died. Agnew stabbed Kristy a total of eight times, and it was the opinion of the medical examiner that five of the wounds were fatal. A knife was later discovered in a garbage dumpster, but it was never submitted for finger print or blood analysis.

## DISCUSSION

I. WHETHER THE TRIAL COURT COMMITTED REVERSIBLE ERROR IN REFUSING TO GRANT AGNEW'S REQUESTED LESSER INCLUDED OFFENSE JURY INSTRUCTION FOR MANSLAUGHTER.

¶6. The standard of review for challenges to jury instructions is as follows: Jury instructions are to be read together and taken as a whole with no one instruction taken out of context. A defendant is entitled to have jury instructions given which present his theory of the case, however, this entitlement is limited in that the court may refuse an instruction which incorrectly states the law, is covered fairly elsewhere in the instructions, or is without foundation in the evidence. *Humphrey v. State*, 759 So. 2d 368, 380 (Miss. 2000) (citing *Heidel v. State*, 587 So. 2d 835, 842 (Miss. 1991).

¶7. Agnew proposed a jury instruction on manslaughter as a lesser-included offense instruction at the close of all the evidence. The trial judge refused this instruction, and the jury was only instructed on the murder charge. Agnew claims that the only evidence presented by the State at trial indicated manslaughter and not murder. Further, he claims that the State failed to present any evidence of "deliberate design" and/or "malice aforethought," one of which is a requirement to the finding of murder.

¶8. Agnew relies on the testimony of two witnesses and some photographs to support this proposition. Tupelo Police Officer Ronnie Thomas testified that the living room was "kind of in general disarray." Officer Thomas's testimony was used to introduce photographs of the living room in the apartment. The pictures show the living room with a few things on the floor e.g., Kristy's glasses, a throw rug which appears to be somewhat crumpled, and a broken end table. Misty testified that this was not the way that she and Kristy usually kept the apartment and that the living room was not in that condition when she went to bed earlier in the evening. Agnew asserts this suggests that an altercation took place.

¶9. The State asserts there was no evidentiary basis to support a manslaughter instruction. Specifically, the State argues there is nothing in the record to connect the photographs of, and testimony regarding, the living

room with anything that happened between Kristy and Agnew. The only evidence shows that Agnew stabbed Kristy with a butcher knife and that Kristy died. Thus, the State concludes that the trial judge did not abuse his discretion in denying the manslaughter instruction because it had no evidentiary support. We agree.

¶10. There is a test to determine whether a lesser-included offense should be submitted to the jury:

> A lesser included offense instruction should be granted unless the trial judge - and ultimately this Court - can say, taking the evidence in the light most favorable to the accused, and considering all reasonable favorable inferences which may be drawn in favor of the accused from the evidence, that no reasonable jury could find the defendant guilty of the lesser included offense (and conversely not guilty of at least one essential element of the principal charge).

*Graham v. State*, 582 So. 2d 1014, 1017 (Miss. 1991) (citing *Gates v. State*, 484 So. 2d 1002, 1004 (Miss. 1986)). The evidence must warrant an instruction on the lesser-included offense before it can be granted. *Id.*

¶11. Our case law leans heavily in favor of instructing the jury on a lesser-included offense. As recently as 1997, we reaffirmed that the jury should be given the option of a lesser-included offense where there is *any* evidentiary basis. *Russell v. State*, 729 So. 2d 781, 787 (Miss. 1997). However, such an instruction should not be indiscriminately or automatically given. *Mease v. State*, 539 So. 2d 1324, 1329 (Miss. 1989). Such an instruction "should only be given after the trial court has carefully considered the evidence and is of the opinion that such an instruction is justified by the evidence." *Id.*

¶12. Thus, it is necessary to assess the distinction between murder and manslaughter. Miss. Code Ann. § 97-3-35 defines manslaughter committed in the heat of passion: "The killing of a human being, without malice, in the heat of passion, but in a cruel or unusual manner, or by the use of a dangerous weapon, without authority of law, and not in necessary self-defense, shall be manslaughter." Murder is "the killing of a human being without the authority of law by any means or in any manner. . .when done with deliberate design to effect the death of the person killed, or of any human being." Miss. Code Ann. § 97-3-19(1)(a).

¶13. Malice and deliberation are necessary elements of murder, and the absence of deliberation is one element distinguishing manslaughter from murder. *Guest v. State*, 96 Miss. 871, 52 So. 211 (1910). In the case sub judice, Agnew asserts there was no evidence of deliberation or of premeditation. He claims at most, there was evidence that he acted in the heat of passion. Specifically, he claims that his unusual conduct on the day of Kristy's death coupled with the testimony and photographs of Kristy's living room support his assertion that he acted in the heat of passion.

¶14. We have defined "heat of passion" as:

> A state of violent and uncontrollable rage engendered by a blow or certain other provocation given, which will reduce a homicide from the grade of murder to that of manslaughter. Passion or anger suddenly aroused at the time by some immediate and reasonable provocation, by words or acts of one at the time. The term includes an emotional state of mind characterized by anger, rage, hatred, furious resentment or terror.

*Graham v. State*, 582 So. 2d at 1017 (citing *Mullins v. State*, 493 So. 2d 971, 974 (Miss. 1986)). Further, the passion felt by the person committing the act should be superinduced by some insult,

provocation, or injury, which would naturally and instantly produce, in the minds of ordinarily constituted men, the highest degree of exasperation. **Id.** at 1018 (citing **Barnett v. State**, 563 So. 2d 1377 (Miss. 1990)). In other words, passion and anger alone are not sufficient to reduce a crime from murder to manslaughter. **Id.** at 1018 (citing **Windham v. State**, 520 So. 2d 123, 127 (Miss. 1987)). Additionally, there must be such circumstances as would indicate that a normal mind would be roused to the extent that reason is overthrown and passion usurps the mind destroying judgment. **Id.**

¶15. Taking the evidence in the light most favorable to Agnew and considering all reasonable favorable inferences which may be drawn in favor of Agnew from the evidence, we find that no reasonable jury could find Agnew guilty of manslaughter. Agnew makes much over the physical condition of the living room. Yet, this evidence of the living room, even when coupled with Agnew's abnormal behavior earlier in the day, fails to establish any nexus between this and any occurrence or event which might have provoked him into acting in the heat of passion. Any heat of passion argument is purely speculation, totally void of any evidentiary support. Accordingly, the court below did not err by refusing the manslaughter jury instruction.

> II. WHETHER THE TRIAL JUDGE COMMITTED REVERSIBLE ERROR BY DENYING AGNEW'S MOTION IN LIMINE TO EXCLUDE THE MURDER WEAPON AND BY ALLOWING TESTIMONY REGARDING THE IDENTIFICATION OF THE WEAPON TO BE ADMITTED AT TRIAL.

A.

¶16. We will begin with Agnew's assertion that the trial judge erred by denying his motion in limine to exclude the murder weapon. Agnew filed a motion in limine to prevent the introduction of the knife, which was the alleged murder weapon, into evidence. Counsel for Agnew told the trial judge that the State had complied with the discovery rules and properly disclosed the knife. The basis for Agnew's motion was that there had been no fingerprint analysis, nor had the knife been tested to determine whether there was blood on it. Agnew claimed that this made the knife irrelevant and prejudicial. The trial judge denied this motion, and informed Agnew that he would rely on Agnew to make timely motions to any attempt by the State to elicit information which had not been furnished to him.

¶17. Evidentiary rulings of a trial judge will not be disturbed absent a showing of a clear abuse of discretion. *Humphrey v. State*, 759 So. 2d at 379. There is nothing in the record to indicate the trial judge clearly abused his discretion in denying the motion in limine. The State did concede that the knife had not been submitted for blood or fingerprint analysis, but asserted that the victim's sister would identify the knife as one from her apartment, and further, as being the same knife she saw Agnew use to stab her sister. The testimony regarding the knife was unquestionably relevant. The weight and credibility to be afforded to the testimony were matters for the jury. *Bridges v. State*, 716 So. 2d 614, 616 (Miss. 1998). Therefore, we find that the trial judge did not abuse his discretion by denying Agnew's motion in limine.

B.

¶18. Lastly, Agnew claims the trial judge erred by refusing to grant a mistrial at the conclusion of Misty High's testimony. He claims the State committed a discovery violation by failing to disclose the substance of her testimony. Specifically, he asserts this failure resulted in unfair surprise which served to undermine the defense strategy and, ultimately, the fairness of his trial. Misty testified that she recognized the knife as one from her apartment, as it had distinguishing characteristics. She and Kristy only had two knives in their

apartment, and part of the handle of this one was broken off. Misty went on to testify that not only could she identify the knife as belonging to her and Kristy, but she could also identify the knife as the same one used by Agnew to stab Kristy. Agnew did not object to this testimony.

¶19. The court took a recess at the completion of Misty's direct examination. Agnew moved for a mistrial at this recess. He claimed Misty's testimony positively identifying the knife as the one Agnew used to stab Kristy was an unfair surprise and a violation of U.R.C.C.C. 9.04A which states:

> [T]he prosecution must disclose to each defendant or defendant's attorney. . .the existence of which is known or by the exercise of due diligence may become known to the prosecution: 1. Names and addresses of all witnesses in chief proposed to be offered by the prosecution at trial, together with a copy of the contents of any statement, written, recorded or otherwise preserved of each such witness and the substance of any oral statement made by any such witness. . . .

The trial judge denied his motion for a mistrial.

¶20. Agnew argues he knew Misty would identify the knife as one coming from her apartment, but he did not know she would identify it as being the same knife Agnew used to stab Kristy. Agnew states the reason he did not object at trial was because it was the defense strategy to demonstrate on cross-examination that no one could positively identify the knife as the one actually used in the homicide. Agnew claims his only option was to move for a mistrial.

¶21. It is elementary, for preservation of error for review, there must be a contemporaneous objection. **King v. State**, 615 So. 2d 1202, 1205 (Miss. 1993) (citing **Smith v. State**, 530 So. 2d 155, 161-62 (Miss. 1988)). In the case now before us, the record reflects that Agnew heard the State, at least three times, declare that Misty High was able to testify not only that the knife recovered from the dumpster belonged to her, but also that it was the same knife she saw Agnew use to stab her sister before Misty actually took the stand and testified to the same.

¶22. First, when the trial judge was ruling on Agnew's own motions in limine, counsel for the State told the trial judge: "We can positively identify a knife found out in the dumpster a[s] being the knife that came from the house *that she saw Mr. Agnew stab her sister with*. So we certainly feel that that knife is admissible." (emphasis added). The basis of Agnew's motion in limine was the lack of fingerprint or blood analysis. He raised no objection regarding Misty's ability to identify that knife as the one used by Agnew.

¶23. Second, in the State's opening statement, counsel for the State told the jury:

> A key - the key witness in this case is Misty High who is the twin sister of the victim Kristy. She will testify to you about what she observed that evening, what they had done that day. *She can also testify to you that she actually saw Eric Agnew stab her sister with this butcher knife*, a knife which she can identify as coming from their kitchen because of the uniqueness of this knife which she will tell you about when she testifies.

(emphasis added). Again, there was no objection from Agnew.

¶24. Third, when the State conducted the direct examination of Tupelo Police Officer Ronnie Thomas, the following exchange occurred:

BY MR. YOUNG: So [Misty] identified that knife as a knife coming from their apartment?

BY OFFICER THOMAS: That's right.

BY MR. YOUNG: And did she also identify that knife as the knife she saw in Eric Agnew's hand?

BY OFFICER THOMAS: That's correct.

Again, there was no objection from Agnew. All three of these instances occurred on the first day of the trial. Misty's testimony that is now in question occurred in the morning on the second day of the trial.

¶25. Agnew argues he believed the reference by the State in its opening statement was only rhetorical and demonstrated the State's intent to introduce statements that would only create circumstantial evidence linking Agnew to the knife. This is of no consequence. Agnew had heard that Misty would identify the knife as being the same one Agnew used to stab her sister at least three times before Misty ever took the witness stand. He neither objected to this information nor told the trial judge he had no prior knowledge the witness could identify the weapon as the murder weapon until the court recess at the conclusion of her testimony.

¶26. Ordinarily, when the defense alerts the trial judge to the prosecution's attempt to introduce evidence which has not been timely disclosed, and the defense objects for that reason, the court shall act as follows:

> 1. Grant the defense a reasonable opportunity to interview the newly discovered witness, to examine the newly produced documents, photographs or other evidence; and

> 2. If, after such opportunity, the defense claims unfair surprise or undue prejudice and seeks a continuance or mistrial, the court shall, in the interest of justice and absent unusual circumstances, exclude the evidence or grant a continuance. . .or grant a mistrial.

U.R.C.C.C. 9.04 I.1., 2.

¶27. Agnew asserts although his objections may be argued untimely, he still raised his objection in the form of a motion for mistrial. Had Agnew truly been surprised his motion for a mistrial may have preserved his arguments for appeal. However, based upon the facts of this case, this argument is without merit. Agnew may claim strategic sandbagging on his part, but he cannot claim unfair surprise. Agnew failed to make a timely objection at trial, and consequently, cannot raise his objections now on appeal.

## CONCLUSION

¶28. Finding no reversible error in the proceedings below, the judgment of the Lee County Circuit Court is affirmed.

¶29. **CONVICTION OF MURDER AND SENTENCE OF LIFE IMPRISONMENT IN A FACILITY TO BE DESIGNATED BY THE MISSISSIPPI DEPARTMENT OF CORRECTIONS, AFFIRMED.**

> **PITTMAN, C.J., BANKS AND McRAE, P.JJ., SMITH, WALLER, COBB, DIAZ AND EASLEY, JJ., CONCUR.**