# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2000-KA-00521-SCT

*GABRIEL McDOWELL a/k/a GARY McDOWELL*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 01/07/2000 |
| TRIAL JUDGE: | HON. JERRY O. TERRY, SR. |
| COURT FROM WHICH APPEALED: | HANCOCK COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | THOMAS D. BERRY, JR. |
| ATTORNEYS FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: DEWITT T. ALLRED, III |
| DISTRICT ATTORNEY: | CONO CARANNA |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 10/31/01 |
| MOTION FOR REHEARING FILED: | 11/15/2001; denied 2/21/2002 |
| MANDATE ISSUED: | 2/28/2002 |

**BEFORE McRAE, P.J., COBB AND DIAZ, JJ.**

**COBB, JUSTICE, FOR THE COURT:**

¶1. On December 7, 1998, Gabriel McDowell was indicted in the Hancock County Circuit Court for the sale of cocaine. McDowell's first trial ended in a mistrial. In his second trial, McDowell was convicted and sentenced as a habitual offender to 30 years imprisonment without possibility of parole. Aggrieved, McDowell now appeals raising the following issues:

**I. THE TRIAL COURT ERRED IN ALLOWING ADMISSION OF A PHOTO LINEUP IDENTIFICATION OF McDOWELL.**

**II. THE TRIAL COURT ERRED IN ALLOWING TESTIMONY OF ATTEMPTED DRUG TRANSACTIONS WITH PERSONS OTHER THAN MCDOWELL PRIOR TO McDOWELL'S ALLEGED TRANSACTION.**

**III. THE TRIAL COURT ERRED IN FAILING TO EDIT THE PREJUDICIAL REMARKS MADE BY A POLICE OFFICER AFTER THE ALLEGED TRANSACTION, FROM A VIDEO TAPE SHOWN TO THE JURY.**

**IV. THE TRIAL COURT IMPROPERLY RESTRICTED CROSS-EXAMINATION.**

**V. THE SECOND TRIAL WAS BARRED BY DOUBLE JEOPARDY.**

**VI. THE TRIAL COURT IMPROPERLY INSTRUCTED THE JURY TO DISREGARD THE CONSEQUENCES OF THEIR VERDICT.**

**VII. THE TRIAL COURT ERRED IN ALLOWING THE STATE TO ARGUE MATTERS NOT IN EVIDENCE TO THE JURY.**

¶2. Additionally, McDowell raises a number of additional issues by way of a supplemental pro se brief which this Court granted him leave to file in an order dated June 27, 2000.[1] Those which are not duplicative include the following, which are interpreted as best we are able:

**I. THE VERDICT OF THE JURY WAS CONTRARY TO THE OVERWHELMING WEIGHT OF THE EVIDENCE SO AS TO EVIDENCE BIAS AND PREJUDICE ON THE PART OF THE JURY.**

**II. THE VERDICT WAS IN ERROR BECAUSE RICO LANEAUX TESTIFIED THAT McDOWELL HAD NOTHING TO DO WITH THE CHARGE.**

**III. THE JURY CONSISTED OF ONE BLACK PERSON AND ELEVEN WHITE PERSONS, ALL OF WHOM WERE CHOSEN OUTSIDE McDOWELL'S PRESENCE.**

**IV. THE TRIAL COURT ERRED IN FAILING TO DIRECT A VERDICT FOR THE DEFENDANT DUE TO INSUFFICIENCY OF THE EVIDENCE.**

¶3. Finding all of these issues to be without merit, we affirm McDowell's conviction.

## FACTS

¶4. On June 22, 1998, Ronald Lessner, an officer with the Biloxi Police Department, was assigned to assist the Hancock County Narcotics Task Force in undercover street operations. Lessner's assignment was to approach people randomly in an area where drug dealers were known to operate and attempt to purchase narcotics from them with funds provided by the Task Force. The Task Force also provided Lessner with a vehicle equipped with audio and video surveillance equipment and a radio link to nearby back-up officers, though Lessner himself was not wearing a wire.

¶5. In the course of Lessner's undercover work, he made contact with unidentified persons driving a brown-colored Cadillac who offered to sell him "a 20", i.e. $20 worth of crack cocaine. Lessner followed the Cadillac to a local convenience store called Dash 6, where the driver of the Cadillac told Lessner to circle the block and come back, presumably so that Lessner could not observe where the driver concealed his drugs.

¶6. When Lessner returned, two other individuals were talking to the persons in the Cadillac: Rico Laneaux (from whom Lessner had purchased drugs in past undercover operations) and the appellant, Gabriel McDowell. Lessner, Laneaux and McDowell had a brief conversation which was captured on videotape, and then Lessner followed Laneaux and McDowell to a nearby abandoned house, where Laneaux attempted to sell Lessner counterfeit crack.

¶7. Lessner, in his role as a crack addict, objected to Laneaux's attempt to deceive him, and then McDowell called Lessner over to the front of the yard where McDowell sold Lessner a piece of crack cocaine for $20. This transaction happened to occur in an area of the yard which was not in view of the camera in Lessner's car, although there is no indication that McDowell had reason to suspect the camera's presence. Shortly after the transaction was completed, Lessner gave a brief description of McDowell and

the tag number of McDowell's car over his radio link to Karl Aderer and Shane Corr, his back-up for that operation. Aderer and Corr then drove by the area where the deal occurred, and Corr observed McDowell (who he knew personally) driving off in the vehicle described by Lessner.

¶8. After leaving the scene of the transaction, Lessner returned to the Task Force headquarters, where he reviewed the tape from his camera in the presence of other police officers. Lessner identified McDowell from the video footage taken at Dash 6 as the man who sold him the cocaine. Corr then identified McDowell by name, apparently outside Lessner's presence. The next day, Aderer showed Lessner a collection of six photographs, including one of McDowell, and Lessner was able to identify McDowell as the person who sold him cocaine. McDowell was not arrested until July 15, 1998, during a roundup of suspected dealers, so as not to blow Lessner's cover.

¶9. During McDowell's first trial, however, Aderer admitted that before administering the photo identification, he said to Lessner: "We believe that the person who sold you the narcotics is one of these pictures." The trial court then granted McDowell's motion for mistrial, although the trial court made it clear that it did not find prosecutorial misconduct and did not view the case as invoking double jeopardy.

¶10. Sometime between McDowell's first and second trials, the trial court heard oral arguments on whether Aderer's statement to Lessner prior to the photo identification rendered that identification unreliable, which the trial court viewed as essentially converting McDowell's motion for mistrial into a motion to suppress the identification. The trial court went on to conclude that Aderer's statement to Lessner, when viewed against the totality of the circumstances, was not impermissibly suggestive. At McDowell's second trial, the court allowed the admission of the photo identification.

¶11. During McDowell's case-in-chief, Laneaux testified for the defense claiming that Lessner asked McDowell for cocaine, but that McDowell did not sell Lessner anything and Lessner left empty-handed. McDowell admitted to being the person on the video footage taken at Dash 6 and to being present at the abandoned house where the transaction allegedly took place, but he denied selling cocaine to Lessner.

## ANALYSIS

### I. THE TRIAL COURT ERRED IN ALLOWING ADMISSION OF A PHOTO LINEUP IDENTIFICATION OF MCDOWELL.

¶12. In concluding that Aderer's statement to Lessner was not so impermissibly suggestive as to invalidate Lessner's identification of McDowell, the trial court applied the balancing test articulated by the U.S. Supreme Court in *Neil v. Biggers*, 409 U.S. 188, 199 (1972). The *Biggers* factors include:

a.the opportunity of the witness to view the criminal at the time of the crime;

b.the witness' degree of attention;

c.the accuracy of the witness' prior description of the criminal;

d.the level of certainty demonstrated by the witness at the confrontation; and

e.the length of time between the crime and the confrontation.

*Biggers*, 409 U.S. at 199. A trial court's ruling on the admissibility of a witness identification is reviewed

for clear error. *Id.* at 200. When reviewing a trial court's findings regarding a pretrial identification which the defendant seeks to suppress, we consider "whether or not substantial evidence supports the trial court's findings that, considering the totality of the circumstances, in-court identification testimony was not impermissibly tainted," and we will disturb the findings of the lower court "only where there is an absence of substantial credible evidence supporting it." *Brooks v. State*, 748 So.2d 736, 741 (Miss. 1999)(citations omitted). Under this standard, even unnecessary and suggestive evidence of an out-of-court identification may be admissible if the identification itself is reliable under the *Biggers* factors. *York v. State*, 413 So.2d 1372, 1382 (Miss. 1982)(relying on *Manson v. Brathwaite*, 432 U.S. 98 (1977)("[R]eliability is the linchpin in determining the admissibility [of out-of-court identifications] . . . .").

¶13. In the case sub judice, McDowell offers only two real reasons for suppressing Lessner's identification of him from the photographic lineup: (1) the statement by Aderer to Lessner and (2) the fact that McDowell's picture happened to be in the first slot. However, Lessner is not a layman who was a victim of a sudden crime. Rather, he is a highly trained police officer who was clearly paying very close attention to McDowell both before and during the transaction. Lessner also described McDowell to Aderer and Corr via radio as he was leaving the crime scene, and apparently pointed McDowell out from the video tape within a few hours of the transaction and prior to making the photo identification. When shown McDowell's picture in a lineup the next day, Lessner showed no hesitation in picking McDowell out.

¶14. In light of the foregoing, we conclude that substantial evidence supported the reliability of Lessner's identification of McDowell, and admission of that identification under the facts of this case was not clearly erroneous. This issue is without merit. However, while the admission of the identification in spite of Aderer's comment does not rise to the level of reversible error under the facts of this case, we caution law enforcement officers that they should refrain from any possibly suggestive comments to witnesses attempting to identify suspects from a photo lineup.

## II. THE TRIAL COURT ERRED IN ALLOWING TESTIMONY OF ATTEMPTED DRUG TRANSACTIONS WITH PERSONS OTHER THAN MCDOWELL PRIOR TO MCDOWELL'S ALLEGED TRANSACTION.

¶15. McDowell's next assignment of error is somewhat nebulous. He appears to object on hearsay grounds to Lessner's direct testimony regarding attempted drug transactions with the individuals in the brown Cadillac which Lessner followed to the Dash 6 convenience store. The State bluntly states that it has "no clue what the Appellant's hearsay-rule argument is about," and notes that McDowell initially objected to this testimony on relevance grounds rather than hearsay. Lessner's testimony at issue appears to be the following:

[BY MR. SCHMIDT]

Q. Why don't you tell us a little bit about when you went out on the street there in this area of town. Describe the events which took place, please.

[BY LESSNER]

A. Well, I was on -- in the area of -- I believe it was Washington, and I was driving in the area just looking. A normal procedure would be that if somebody would want to do a deal with me, they would flag me down. But this particular case, I stopped in the middle of the roadway and was trying

to have a conversation with a gentleman sitting in a front yard when a brown Cadillac pulled up in between us and actually intervened in the conversation. While the brown Cadillac was there, I spoke to the driver.

MR. BERRY: Excuse me. I'll have to interpose another objection. We've covered this on a motion on limine.

MR. SCHMIDT: I believe it was overruled, Judge.

THE COURT: Overruled.

MR. BERRY: I want to interpose an objection anyway as hearsay. It's outside the hearing of my client, and he has no knowledge of it.

THE COURT: It's overruled.

MR. BERRY: Yes, sir.

BY MR. SCHMIDT:

Q. Tell us what happened, where you went with this Cadillac; what happened next?

A. I spoke to the driver of the Cadillac, and then the Cadillac told me to "Follow me." They backed up, turned around, and then he went down to a convenience store called the Dash 6. They pulled in there; I pulled in there. Four individuals got out of the vehicle. I asked them for a 20. A "20" is a common street name for $20 worth of crack cocaine. Then one of the gentlemen told me to make the block, which is -- which is pretty common if they don't have it on them and they'll have to go get some real quick, or if they try to conceal --

MR. BERRY: We object to that, if the Court please, "pretty common."

THE COURT: Overruled.

¶11. The Mississippi Rules of Evidence define hearsay as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." M.R.E. 801(c). As the above passage makes clear, the State offered no statements made by the persons in the brown Cadillac to prove the truth of any matter asserted, and McDowell fails to explain his basis for concluding that any of those statements were hearsay. Statements such as "Follow me" and "Make a block and come back" cannot prove anything other than the fact that the statement was made, and they are perfectly admissible for that purpose. *See* M.R.E. 801 cmt. ("If the significance of a statement is simply that it was made and there is no issue about the truth of the matter asserted, then, the statement is not hearsay"). This issue is without merit.

¶12. McDowell's reply brief also, in a roundabout way, suggests that Lessner's testimony regarding the Cadillac fails the balancing test of Rule 403. In a motion in limine prior to the second trial, McDowell attempted to exclude discussion of the Cadillac stating that "[i]t was brought out that there was a brown Cadillac that he concentrated on when he first got there, and the occupants. But it played no part in this case, and we feel like that shouldn't be allowed to creep into our testimony." The State replied that the testimony was "an observation made by the officer" which "indicates his awareness of his surroundings," and

the trial court denied McDowell's motion.

¶13. The denial of a motion in limine, like all evidentiary rulings, is reviewed for abuse of discretion. *Agnew v. State*, 783 So.2d 699, 704 (Miss. 2001). The State argues that Lessner's testimony was probative in that it explained how he came to make contact with Laneaux and McDowell, and that it is permitted to present the jury with a rational and coherent account of events surrounding the crime, so as to prevent confusion. Against this probative value, McDowell offers no basis for finding substantial prejudice other than his claim that the testimony allowed the jury to infer the existence of a drug ring of which Laneaux and McDowell were members. This conclusory statement is unsupported by the trial record, and the trial court did not abuse its discretion in denying McDowell's motion to exclude the testimony regarding the Cadillac.

### III. THE TRIAL COURT ERRED IN FAILING TO EDIT THE PREJUDICIAL REMARKS OF A POLICE OFFICER MADE AFTER THE ALLEGED TRANSACTION FROM A VIDEO TAPE SHOWN TO THE JURY.

¶14. This issue apparently is raised with regard to the following facts: As Lessner left the scene of the transaction, his radio link with Shane Corr and Karl Aderer was still live. When Corr and Aderer drove by the area where the drug deal took place, Corr saw McDowell (who he knew personally) driving away. Corr identified him by name, saying "That's going to be Gabriel McDowell", or words to that effect, and that statement was overheard by Lessner and recorded by the surveillance equipment in Lessner's car. McDowell's assignment of error lies in the trial court's refusal to edit out that statement before the tape was played to the jury. His reasoning appears to be that the tape recorded statement was overly prejudicial and was also hearsay.

¶20. In response, the State again notes (1) that Corr's statement on the tape is essentially the same as his trial testimony that he recognized McDowell driving the car which Lessner had just described, (2) that the testimony was probative on the issue of McDowell's identity, and (3) that the entire issue was rendered moot when Laneaux and McDowell testified at trial that McDowell was present at the scene and drove away in the vehicle described by Lessner.

¶21. To the extent that McDowell argues that the statement was hearsay, we conclude that the statement was properly admissible under Rule 803(1) which creates an exception to the hearsay rule for "[a] statement describing or explaining an event or condition made while the declarant was perceiving the event or condition or immediately thereafter." M.R.E. 803(1). To the extent that McDowell argues that the statement should have been inadmissible due to substantial prejudice, we conclude that the trial court did not abuse its discretion in concluding that any prejudice from Corr's statement did not substantially outweigh its probative value. *See Agnew*, 783 So.2d at 704.

### IV. THE TRIAL COURT IMPROPERLY RESTRICTED CROSS-EXAMINATION.

¶22. McDowell's next issue refers to a hodgepodge of incidents during the trial in which the trial court sustained the State's numerous objections to McDowell's cross-examination of State witness as being argumentative, speculative or repetitive.[2] McDowell argues that, collectively, these objections (all of which were sustained) improperly restricted his right of cross-examination as guaranteed by the Sixth Amendment of the U.S. Constitution.

¶23. This Court has held that "[t]he scope of cross-examination is wide, but that scope is 'coextensive with

the limits of relevancy measured by the issues.' " *Ellis v State*, 661 So.2d 177, 184 (Miss. 1995)(quoting *Black v. State*, 506 So.2d 264, 267 (Miss. 1987). The Comment to Rule 611 identifies three principles underlying the orderly presentation of evidence: (1) effectiveness in determining the issues, (2) avoidance of needless waste of time, and (3) protection of the witness from harassment and embarrassment. M.R.E. 611 cmt. Limitations placed on cross-examination by the trial court are reviewed for abuse of discretion. *Ellis*, 661 So.2d at 184.

¶24. Having reviewed the trial transcript in its entirety, we conclude that McDowell's right to cross-examination was in no way limited. In each instance referred to by McDowell, the trial court sustained objections to specific questions on grounds that they were speculative or argumentative or had already been asked and answered. At no point was McDowell actually barred from exploring any topic on cross-examination. The trial court did not abuse its discretion in sustaining any of the State's objections which McDowell now raises as reversible error.

## V. McDOWELL'S SECOND TRIAL WAS BARRED BY DOUBLE JEOPARDY.

¶25. McDowell cites *Carter v. State*, 402 So. 2d 817 (Miss. 1981), for the proposition that when "the Defendant was put into a position to move for a Mistrial by the prosecution or even the Court, then the Defendant should not be barred to raise the double jeopardy complaint." A more careful reading of *Carter* reveals the following rule:

> In order to elevate an order granting a mistrial in a criminal case at the request of the defendant to one which could form the basis of a claim of double jeopardy, it must be shown not only that there was error, which is the common predicate to all such orders, but that such error was committed by the prosecution or by the court *for the purpose* of forcing the defendant to move for the mistrial.

*Carter*, 402 So.2d at 821 (emphasis added). In other words, "[w]ithout proof of judicial error prejudicing the defendant, or 'bad faith prosecutorial misconduct,' double jeopardy does not arise." *Jenkins v. State*, 759 So.2d 1229, 1234 (Miss. 2000)(quoting *United States v. Jorn*, 400 U.S. 470, 482 (1970)(plurality) ).

¶26. The mistrial in McDowell's first trial was declared after Karl Aderer testified in the presence of the jury that he showed Lessner a photo lineup and said: "We believe that the person who sold you the narcotics is one of these pictures." At this point, there was confusion as to whether the statement had actually been made and whether Lessner had previously identified McDowell from the video prior to looking at the photo lineup. Eventually, after the trial court stated that it was unsure of how to cure the error, McDowell moved for a mistrial, and the court granted the motion. However, the trial court made it clear, and McDowell agreed, that there was no sign of prosecutorial misconduct in the testimony which led to the mistrial, and McDowell offers this Court no legitimate basis for concluding that the prosecution exhibited bad faith. In light of that fact, we perceive no basis for holding that double jeopardy applies. This issue is without merit.

## VI. THE TRIAL COURT IMPROPERLY INSTRUCTED THE JURY TO DISREGARD THE CONSEQUENCES OF THEIR VERDICT.

¶27. McDowell concedes that the amount of time to which a defendant may be sentenced is not an appropriate topic for closing arguments. *Abney v. State*, 86 So. 341 (Miss. 1920)("[T]he jury have no concern, in arriving at their verdict, with the quantum of punishment that may be inflicted in response

thereto"); *see also* **Marks v. State**, 532 So.2d 976, 983 (Miss. 1988)("We have consistently disapproved of arguments which refer to the potential sentence in a given case.") Rather, he argues that by denying him the right to urge the jury to consider the consequences of a conviction for him, the trial court was effectively causing the jury to "act without conscience" as if it were "a Nuhrenberg [sic] jury" because if the jury makes a mistake "we can fix it on appeal." The State argues that McDowell was actually attempting "to convey the message that while the jurors could go home after the trial, McDowell would go to prison for life if the jury found him guilty."

¶28. This issue turns on the following exchanges during closing arguments:

[MR. BERRY:] You gave us your oath that you'd try this case fairly and squarely on the evidence. We believed you. This is a serious case, serious consequences for my client.

MR. SCHMIDT: Objection, Judge.

THE COURT: Don't argue consequences.

MR. BERRY: You know, when I conclude, I'll go over to that table and sit down, wait for your conclusion. Then I'll go back to my office and get on to something else.

MR. SCHMIDT: Objection to that, Judge.

THE COURT: Overruled. I'll let him say what he's going to say, and then I'll -- don't talk about consequences, though.

MR. BERRY: You jurors will go back to your homes. But what you do today will affect Gabriel McDowell the rest of his life.

MR. SCHMIDT: That's the same objection, Judge.

THE COURT: Sustained. The jury will disregard the consequences of whatever the verdict is, regardless of the consequences.

¶29. We agree with the State's assessment of McDowell's closing argument. Statements such as "You jurors will go back to your homes. But what you do today will affect Gabriel McDowell the rest of his life" cannot be viewed as anything but an enticement for the jury to consider the severity of the penalty McDowell faced if convicted. Such an argument is improper, and the trial court was correct when it instructed the jurors to disregard the consequences of their verdict. This issue is without merit.

## VII. THE TRIAL COURT ERRED IN ALLOWING THE STATE TO ARGUE MATTERS NOT IN EVIDENCE TO THE JURY.

¶30. The final issue raised in the brief submitted by McDowell's counsel is an objection raised for the first time on appeal to the following statements made by the prosecutor during closing arguments:

I told you we'd hear from Ron Lessner who came over from Biloxi Police Department. He's an undercover officer, was at that time. He's an investigator in Biloxi in their crime unit. He was going to testify that he was an undercover officer over here and was part of an ongoing operation making street-level curb-service buys. He would testify about how he was dressed, how he acted, and how

he had to present himself as an undercover officer.

He did testify about all of that. I informed you he would testify, and, in fact, he did testify that he was in the pickup truck, the little Chevy S-10, and they went into the area where they believed crack cocaine or illegal drugs were being sold and he bought some cocaine. *He had contact with some people before that in a Cadillac and they told him to make the block. He made the block and he came back and he made contact with a guy he recognized before, the guy who testified this morning, Rico.* He recognized him because he had bought cocaine from him previously. And Rico was with another guy driving the station wagon.

(emphasis added).

¶31. McDowell also points to the following later passage:

The Court instructs you to recall the testimony as the way you recall, not the way I recall it. *I could be wrong, but I think I remember seeing Rico get out of that Cadillac. You decide that. Not coming out from the AutoZone.*

(emphasis added).

¶32. According to McDowell, these statements suggested to the jurors that the persons in the Cadillac directed Rico Laneaux to sell drugs to Lessner, thereby implying the existence of a drug ring which was not otherwise supported by the evidence.

¶33. Having read the transcript in its entirety, we conclude that the first passage is an accurate summation of Lessner's testimony, and McDowell has not identified anything in the record indicating that the jury improperly contemplated McDowell's involvement with any drug ring. The second passage, while somewhat clumsy, appears to be an instruction for the jurors to rely on the testimony as they remember hearing it, rather than on interpretations put forth by counsel of either side in closing arguments. Indeed, the prosecutor could not personally "remember seeing" anything Rico Laneaux did, since the prosecutor was not a witness to the events surrounding the transaction.

¶34. In any event, the State argues that this issue is procedurally barred because it was not raised below. McDowell concedes that he did not object to either of these two statements, but argues that they are both plain error. The plain error doctrine[(3)] is implicated when an error occurs at trial which affects substantial rights and results in "a manifest miscarriage of justice." *Gray v. State*, 549 So.2d 1316, 1321 (Miss. 1989). We perceive no substantial right that was affected by these two brief statements which McDowell has taken out of context. This issue is without merit.

### VIII. THE VERDICT OF THE JURY WAS CONTRARY TO THE OVERWHELMING WEIGHT OF THE EVIDENCE SO AS TO EVIDENCE BIAS AND PREJUDICE ON THE PART OF THE JURY.

¶35. McDowell is apparently challenging the verdict as being against the overwhelming weight of the evidence, although his pro se brief actually says "overwhelming weight of the jury." However, McDowell cites no authority in support of this issue. When determining whether a jury verdict is against the overwhelming weight of the evidence, we "must accept as true the evidence which supports the verdict and will reverse only when it is convinced that the circuit court has abused its discretion in failing to grant a new

trial." ***Isaac v. State***, 645 So.2d 903, 907 (Miss. 1994). Accepting the State's evidence as true, we perceive no basis for questioning the verdict and conclude that the circuit court did not abuse its discretion in denying McDowell's motion for a new trial.

## IX. THE VERDICT WAS IN ERROR BECAUSE RICO LANEAUX TESTIFIED THAT MCDOWELL HAD NOTHING TO DO WITH THE CHARGE.

¶36. McDowell next assigns as error the fact Rico Laneaux "stated on the witness stand that I Gabriel McDowell had nothing to do with the said charge." McDowell cites no authority for the proposition that the presence of a defense witness who contradicts a prosecution witness, without more, compels an acquittal. Conflicts between the testimony of State witnesses and that of defense witnesses were properly resolved by the jury. This issue is without merit.

## X. THE JURY CONSISTED OF ONE BLACK PERSON AND ELEVEN WHITE PERSONS, ALL OF WHOM WERE CHOSEN OUTSIDE McDOWELL'S PRESENCE.

¶37. McDowell alleges (without citation to the record) that his jury consisted of one black juror and eleven white jurors. Without waiving any procedural bars to consideration of this issue, the State points out that apparently there were only two black persons on the venire panel. The record reflects only that one of two black females was struck for cause and the other served on the jury. On the record before us, there is no way to tell how many (if any) black men on the venire pool were struck for cause or were removed with peremptory challenges. In any case, this Court has clearly established that "a party waives any and all claims regarding the composition of his jury if he fails to raise an objection before the jury is sworn." ***Smith v. State***, 724 So.2d 280, 330 (Miss. 1998)(quoting ***Conner v. State***, 632 So.2d 1239, 1264 (Miss. 1993)). McDowell's pro se brief further suggests that there was something improper about his attorney meeting with the trial court and the prosecutor outside his presence to discuss peremptory challenges and for-cause strikes. McDowell cites no authority for this reasoning. This issue is without merit.

## XI. THE TRIAL COURT ERRED IN FAILING TO DIRECT A VERDICT FOR THE DEFENDANT DUE TO INSUFFICIENCY OF THE EVIDENCE.

¶38. This Court's well-established standard of review for motions for directed verdict and a challenges to the sufficiency of evidence is as follows:

> [W]e must, with respect to each element of the offense, consider all of the evidence--not just the evidence which supports the case for prosecution--in the light most favorable to the verdict. The credible evidence which is consistent with the guilt must be accepted as true. The prosecution must be given the benefit of all favorable inferences that may reasonably be drawn from the evidence. Matters regarding the weight and credibility to be accorded the evidence are to be resolved by the jury. We may reverse only where, with respect to one or more of the elements of the offense charged, the evidence so considered is such that reasonable and fair-minded jurors could only find the accused not guilty.

***Gleeton v. State***, 716 So.2d 1083, 1087 (Miss. 1998)(quoting ***Wetz v. State***, 503 So.2d 803, 808 (Miss. 1987)(citations omitted). Applying this stringent standard to the case sub judice, there is no basis for concluding that the evidence against McDowell was insufficient to support a conviction. This issue is without merit.

## CONCLUSION

¶39. Because all the issues raised by McDowell, both in the brief submitted by his attorney and in his pro se supplemental brief are without merit, the judgment of the Hancock County Circuit Court is affirmed.

¶40. **CONVICTION OF TRANSFER OF A CONTROLLED SUBSTANCE AS A HABITUAL OFFENDER AND SENTENCE OF THIRTY YEARS IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS WITHOUT HOPE OF PAROLE, GOOD TIME WORK RELEASE OR OTHER EARLY RELEASE, AFFIRMED.**

**PITTMAN, C.J., McRAE, P.J., SMITH, MILLS, WALLER, DIAZ AND EASLEY, JJ., CONCUR. BANKS, P.J., CONCURS IN PART WITH SEPARATE WRITTEN OPINION.**

**BANKS, PRESIDING JUSTICE, CONCURRING IN PART:**

¶41. I agree with the result reached by the majority in this case. I write separately, however, to express my views as to the comments made by the defense counsel in his closing argument. I believe that the argument made by the defense counsel regarding the effect of a conviction, does not necessarily relate to the possible sentence. In my view the court erred in sustaining the prosecution's objection.

¶42. It is my further view, however, that the error is not sufficiently prejudicial to warrant reversal. Accordingly, the judgment should be affirmed.

1. McDowell was granted leave only to raise issues not raised in his counsel's brief, but some were duplicative. Further issues were raised in an amended supplementary pro se brief filed by McDowell on July 21, 2000, but this Court denied McDowell's second request to raise additional issues, and they are not considered in this opinion.

2. Some of the exchanges to which McDowell objects took place in his first trial. McDowell cites no authority for the proposition that a ruling on an objection from one trial ending in a mistrial can be preserved through the retrial.

3. The plain error doctrine arises from Mississippi Rule of Evidence 103(2)(d), which states: "Nothing in this rule precludes taking notice of plain errors affecting substantial rights although they were not brought to the attention of the court." M.R.E. 103(2)(d).