*1145
 
 KING, C.J., for the court.
 

 ¶ 1. Desmond Keys was convicted of murder and sentenced to life in the custody of the Mississippi Department of Corrections (MDOC), and if released before the full sentence is served, he was ordered to complete the Eighteenth District Circuit Court’s Community Service Program. On appeal, Keys raises the following assignments of error: (1) the trial court committed reversible error by failing to instruct the jury on Keys’s theory of the case, and (2) the trial court erred in permitting Dr. Steven Hayne to testify in the area of terminal ballistics and to testify regarding the manner and cause of death. Finding no error, we affirm the judgment of the trial court.
 

 FACTS
 

 ¶ 2. On the night of July 27, 2006, William Tucker, his cousin Vernon Washington, Leon Gavin, and Melvin
 
 [1]
 
 were standing outside Tucker’s home at the Lone Oak Apartment complex in Laurel, Mississippi talking, when Keys stopped by to talk with the men. Tucker and Keys got into an argument, which led to a physical altercation. Washington testified that he was attempting to separate the men, when Keys threw his cell phone at Tucker and stated that he would be back. Tucker testified that fearing Keys would return, he and Washington left and went to Tucker’s brother’s house to avoid trouble. Keys returned while Tucker was gone and opened fire on Tucker’s apartment.
 

 ¶ B. Approximately thirty minutes later, Tucker returned home to find that his five-year-old daughter, Mariyanna Marie Tucker, had been shot as she lay sleeping in her bed. Mariyanna died as a result of her injuries.
 

 ¶ 4. State witnesses, Kametra Leggins and Donna Wilson, both testified that they witnessed Keys shoot multiple times into Tucker’s residence. During an investigation of the crime scene, investigators retrieved thirty-three shell casings outside the apartment and identified forty-three impacts or holes in the apartments’ walls and one hundred - and twelve defects caused by flying bullets.
 

 ¶ 5. Keys was tried and found guilty on November 16, 2007, of the murder of Mari-yanna. On November 21, 2007, Keys filed a motion styled Motion for Judgment of Acquittal Notwithstanding the Verdict or, in the Alternative, a New Trial. The trial court denied the motion on November 28, 2007. Keys timely filed this appeal.
 

 ANALYSIS
 

 I. Whether the trial court committed reversible error by failing to instruct the jury on Keys’s theory of the case.
 

 ¶ 6. Keys argues that the trial judge committed reversible error because he did not grant four jury instructions Keys requested. Keys asserts that the jury should have been instructed on his theory of the case, which was manslaughter. This Court’s standard of review to challenges of jury instructions on appeal is as follows:
 

 Jury instructions are to be read together and taken as a whole with no one instruction taken out of context. A defendant is entitled to have jury instructions which present his theory of the case; however, this entitlement is limited in that the court may refuse an instruction which incorrectly states the law, is covered fairly elsewhere in the instructions, or is without foundation in the evidence.
 

 Lawrence v. State,
 
 3 So.3d 754, 758(¶ 19) (Miss.Ct.App.2008). Although the trial
 
 *1146
 
 court has considerable discretion as to the form and substance of jury instructions, the jury must be adequately instructed in a manner such that it understands each party’s theory.
 
 Brown v. State,
 
 768 So.2d 312, 315(¶ 9) (Miss.Ct.App.1999). “If the instructions fairly announce the law of the case and create no injustice, no reversible error will be found.”
 
 Lawrence,
 
 3 So.3d at 758(¶ 19).
 

 ¶ 7. Keys proposed the following jury instructions: D-12, which defined heat-of-passion manslaughter; D-ll, which defined culpable-negligence manslaughter; D-10, which instructed on the lesser-included offense of manslaughter; and D-6, which instructed on the form of the verdict as to manslaughter. The text of the proffered jury instructions reads as follows:
 

 Jury Instruction D-12
 

 The Court instructs the jury that the term “heat of passion” is defined as a state of violent and uncontrollable rage engendered by a blow or certain other provocation given and will reduce a homicide from the grade of murder to that of manslaughter. The term includes an emotional state of mind characterized by anger, rage, hatred, furious resentment or terror.
 

 Therefore, if you find from the evidence and testimony in this case that Desmond Keys acted in the heat of passion, and while in a state of heat of passion caused the death of Mariyanna Tucker, by shooting her with an automatic weapon, then you shall find the defendant guilty of manslaughter.
 

 Jury Instruction D-ll
 

 The Court instructs the Jury that the killing of a human being by the culpable negligence of another, without authority of law, is manslaughter, and the Court further instructs the jury that culpable negligence is defined as negligence of a degree so gross as to be tantamount to a wanton disregard of, or utter indifference to, the safety of human life.
 

 If you believe from the evidence beyond a reasonable doubt that the death of Mariyanna Tucker was caused by the culpable negligence of the defendant, Desmond Keys, then you shall find the defendant guilty of the crime of manslaughter.
 

 Jury Instruction D-10
 

 The Court instructs the jury that if you find from the evidence in this case that the defendant Desmond Keys, is not guilty of the crime of Murder, then you may proceed with your deliberations to determine whether the State has proven, beyond a reasonable doubt, all of the elements of the lesser crime of Manslaughter.
 

 This provision is not designed to relieve you from the performance of an unpleasant duty. It is included to prevent a failure of justice if the evidence fails to prove the original charge of Murder but does justify a verdict for the lesser crime of Manslaughter.
 

 However, notwithstanding this right, it is your duty to accept the law as given [to] you by the Court; and if the facts and the law warrant a conviction of the greater crime, then it is your duty to make such finding uninfluenced by your power to find a lesser offense.
 

 Jury Instruction D-6
 

 The Court instructs the Jury that if you find the Defendant guilty of murder, the form of your verdict shall be as follows: “We, the Jury, find the Defendant guilty of murder.”
 

 The Court further instructs the Jury that if you find the Defendant guilty of manslaughter, the form of your verdict shall be as follows: “We the Jury, find the Defendant guilty of manslaughter.”
 

 
 *1147
 
 The Court further instructs the Jury that if you find the Defendant Not Guilty of murder and Not Guilty of manslaughter, then the form of the verdict shall be as follows: “We, the Jury, find the Defendant Not Guilty.”
 

 You should write your verdict on a separate sheet of paper.
 

 ¶ 8. The trial court refused to grant these instructions on manslaughter, but it instructed the jury on murder. Keys asserts that even if everything the prosecution said were true, he could only be guilty of either culpable-negligence manslaughter or heat-of-passion manslaughter. He argues that the refusal of his requested instructions, precluded the jury’s consideration of his theory of defense, which was manslaughter, a lesser-included offense of murder. In determining whether a lesser-included-offense instruction should be submitted, this Court applies the following standard:
 

 A lesser-included-offense instruction should be granted unless the trial judge — and ultimately this Court — can say, taking the evidence in the light most favorable to the accused, and considering all reasonable favorable inferences which may be drawn in favor of the accused from the evidence, that no reasonable jury could find the defendant guilty of the lesser-included offense (and conversely not guilty of at least one essential element of the principal charge).
 

 Gates v. State,
 
 484 So.2d 1002, 1004 (Miss.1986). Stated otherwise, absent an eviden-tiary foundation, no lesser-included-offense instruction will be granted.
 
 Agnew v. State,
 
 783 So.2d 699, 703(¶ 10) (Miss.2001).
 

 ¶ 9. Keys contends that the culpable-negligence jury instruction was a proper statement of the law and that the trial court erred in refusing such instruction because this was not an intent-to-kill indictment, but a depraved-heart-murder indictment. There was no factual basis for Keys’s requested culpable-negligence-manslaughter instruction. The culpable-negligence-manslaughter instruction was inappropriate because the record indicates that after Washington broke up the scuffle between Tucker and Keys, Keys left the scene, went home and retrieved a semiautomatic assault weapon, returned, and fired multiple times toward and into Tucker’s apartment. The State asserts that the sheer number of bullets fired toward or into Tucker’s home completely negated any notion that Keys’s actions were negligent rather than intentional.
 

 ¶ 10. Katmetra Leggins testified that as she was turning into the Lone Oak Apartment complex, she saw Keys standing on the corner under a big tree by Tucker’s apartment shooting at the apartment. Leggins stated that when she saw Keys and asked him what was going on, he turned the gun on her and shouted some offensive language and told her that she “could get it too.”
 

 ¶ 11. Donna Wilson testified that she initially saw Keys standing beside the bushes shooting toward Tucker’s apartment, and then she saw him walk around the apartment shooting. Arianna Wilson also testified that she saw Keys shooting toward Tucker’s apartment.
 

 ¶ 12. Vivian Tucker testified that as she was returning home from the store she heard numerous gunshots and subsequently saw Keys walking away from the direction of her apartment toward a pink Ford Escort carrying a handgun in one hand and what appeared to be a semiautomatic assault rifle in the other hand.
 

 ¶ 13. As stated, Keys returned to Tucker’s home allegedly with two guns and fired upon Tucker’s apartment. The evidence indicates that Tucker’s apartment
 
 *1148
 
 sustained significant damage. Investigator Mike Sumrall testified that bullets caused several defects in the walls, and the bullets penetrated the furniture and fixtures found throughout the apartment. Investigator Sumrall stated that the definite groupings and vertical angle of the bullets within the windows indicate intent which suggests that the intended target was of human height. Both Vivian and Tucker testified that Keys was aware that children lived at the residence and likely were asleep during the time of the shooting. Vivian stated that when she left the apartment to go to the store, Keys was standing there with Tucker and Washington when she informed Tucker that she had just put the girls to bed. The evidence clearly indicates that Keys acted with the deliberate intent to cause harm to those inside Turner’s apartment. Thus, we find that the evidence in this case did not support a culpable-negligence-manslaughter instruction.
 

 ¶ 14. Keys also asserts that a heat-of-passion instruction should have been given because an altercation occurred between Tucker and Keys prior to the shooting. The supreme court has defined heat of passion as follows:
 

 In criminal law, a state of violent and uncontrollable rage engendered by a blow or certain other provocation given, which will reduce a homicide from the grade of murder to that of manslaughter. Passion or anger suddenly aroused at the time by some immediate and reasonable provocation, by words or acts of one at the time. This term includes an emotional state of mind characterized by anger, rage, hatred, furious resentment or terror.
 

 Tait v. State,
 
 669 So.2d 85, 89 (Miss.1996). According to
 
 Agnew,
 
 783 So.2d at 703-04(¶ 14):
 

 [P]assion and anger alone are not sufficient to reduce a crime from murder to manslaughter. Additionally, there must be such circumstances as would indicate that a normal mind would be roused to the extent that reason is overthrown and passion usurps the mind destroying judgment.
 

 (Internal citations omitted).
 

 ¶ 15. “The test for determining whether a manslaughter instruction based on a heat-of-passion theory is warranted is whether [the defendant] acted in the heat of passion and without malice.”
 
 Neese v. State,
 
 993 So.2d. 837, 850(¶ 31) (Miss.Ct.App.2008) (citations and internal quotations omitted). The supreme court in
 
 Moody v. State,
 
 841 So.2d 1067, 1097(¶ 98) (Miss.2003) held that the determination of whether the defendant acted in the heat of passion and without malice is an objective question. That question is whether a reasonable person would have been so provoked.
 
 Id.
 

 ¶ 16. The facts and evidence in this case did not warrant a heat-of-passion instruction. Keys’s conduct was not a reaction made in the spur of the moment, but rather it was a deliberate action. The State presented testimony that Keys became upset because Tucker did not take Keys’s boast about being a “big shot” seriously. Washington testified that the discussion escalated to a physical altercation between Tucker and Keys. Washington stated that while trying to separate the two men, Keys threw his cell phone at Tucker and made certain scatological remarks and then stated that he would be back. Tucker testified that once the physical altercation ended, he and Washington immediately left. Tucker returned approximately thirty minutes after the altercation to find that his little girl had been shot.
 

 
 *1149
 
 ¶ 17. The evidence indicates that Keys returned at some point within that thirty minute time period while Tucker was gone with his weapon(s) and fired upon Tucker’s home killing Mariyanna. The record contains no evidence of any action or offense which should have provoked in Keys such a violent and uncontrollable rage. However, if there were any provocation, the time between the alleged provocation and the shooting should have permitted Keys to “cool off.” Thus, the evidence does not support an instruction for heat-of-passion manslaughter.
 

 ¶ 18. The defense rested without presenting any evidence to refute the evidence presented by the State. Considering the evidence in the light most favorable to Keys, there was still no factual basis for the requested jury instructions. Thus, we find that no reasonable jury could find that Keys committed manslaughter rather than murder. The trial court did not err in refusing the proffered jury instructions. Therefore, this assignment of error is without merit.
 

 II. Whether the trial court erred in permitting the testimony of Dr. Steven Hayne.
 

 A. Terminal Ballistics
 

 ¶ 19. Keys argues that Dr. Hayne testified as an expert in terminal ballistics, although he lacked the necessary education and training to testify as an expert in the field. Keys asserts that because Dr. Hayne testified as an “expert,” the jury was more likely to give credence to his testimony. Keys contends that the trial court erred in allowing Dr. Hayne to testify that the bullet that killed Mariyanna was a high-velocity bullet. Keys claims that Dr. Hayne provided no scientific basis for his opinion.
 

 ¶ 20. We find that Dr. Hayne was qualified to testify as an expert in the area of terminal ballistics because terminal ballistics is a subfield of forensic pathology.
 
 See Williams v. State,
 
 964 So.2d 541, 544(¶ 8) (Miss.Ct.App.2007). Furthermore, Keys failed to voir dire or object to Dr. Hayne’s qualifications. “The supreme court has refused to hold that an expert was not properly qualified when the opposing party did not object to the witness’s credentials but only to the testimony.”
 
 McBeath v. State,
 
 739 So.2d 451, 454 (¶ 10) (Miss.Ct.App.1999).
 
 See Baine v. State,
 
 604 So.2d 249, 255 (Miss.1992). Having failed to object to Dr. Hayne’s qualifications in the area of terminal ballistics, Keys is proeedurally barred from raising this issue. Keys did object to the State’s question on direct examination of Dr. Hayne regarding whether the bullet that killed Mariyanna was a high-velocity or low-velocity bullet. Before the trial court could rule on the objection, the State rephrased the question. Dr. Hayne was then asked if he had an opinion based on his training and experience to a reasonable degree of medical certainty as to the velocity of the bullet which caused the death of Mariyanna.
 

 ¶ 21. Mississippi Rule of Evidence 702 outlines the requirements permitting an expert to testify. Rule 702 states, in part, that:
 

 If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise....
 

 ¶ 22. Keys did not object to the rephrased question. If a defendant fails to timely object to an issue at trial, the issue is waived for purposes of appeal.
 
 Cavett v. State,
 
 717 So.2d 722, 726(¶21)
 
 *1150
 
 (Miss.1998). “The trial court will not be held in error on a matter that was never presented for its consideration.”
 
 Bogan v. State,
 
 754 So.2d 1289, 1294(¶ 19) (Miss.Ct.App.2000). Accordingly, we find that this issue is both proeedurally barred and without merit.
 

 B. Certification
 

 ¶ 23. Keys argues that the trial court erred by allowing Dr. Hayne to testify to the cause and manner of death of Mariyanna without having the proper medical credentials and qualifications. “[F]o-rensic pathology is generally accepted as a division within pathology!,] and a forensic pathologist ‘addresses two basic questions: what was the cause of death, and what was the manner of death?’ ”
 
 Ross v. State,
 
 883 So.2d 1181, 1184(¶ 5) (Miss.Ct.App.2004) (citation omitted). The qualification of an expert who will offer expert opinion under Mississippi Rule of Evidence 702 is a matter vested in the sound discretion of the trial court.
 
 McNeal v. State,
 
 617 So.2d 999, 1007 (Miss.1993). Dr. Hayne testified that he is a physician who works in the fields of anatomic clinical and forensic pathology. The trial court accepted that Dr. Hayne was qualified as an expert in the area of forensic pathology without any objection or voir dire from defense counsel. Therefore, we find that Dr. Hayne’s testimony as to the cause and manner of death of Mariyanna was permissible.
 

 ¶ 24. Keys also contends that the trial court erred by allowing Dr. Hayne to testify as a medical examiner although he is not board certified by the American Board of Pathology as required by statute. According to Mississippi Code Annotated section 41-61-55 (Rev.2005), only the State Medical Examiner is required to be certified in the area of forensic pathology by the American Board of Pathology, not a forensic pathologist performing autopsies. Dr. Hayne testified that he is a licensed physician with expertise in anatomic clinical and forensic pathology. Dr. Hayne stated that he works as the chief state pathologist with the Department of Public Safety for the medical examiner’s office for the State of Mississippi. Dr. Hayne did not testify that he was the State Medical Examiner. Therefore, Dr. Hayne is not required to be board certified by the American Board of Pathology. Accordingly, this assignment of error is without merit.
 

 CONCLUSION
 

 ¶ 25. The trial court did not abuse its discretion in refusing jury instructions on culpable-negligence and heat-of-passion manslaughter. In addition, the trial court did not err by allowing Dr. Hayne to testify as an expert in the area of terminal ballistics and to the cause and manner of death of the victim. Therefore, we affirm the judgment of the trial court.
 

 ¶ 26. THE JUDGMENT OF THE CIRCUIT COURT OF JONES COUNTY OF CONVICTION OF MURDER AND SENTENCE OF LIFE IN THE CUSTODY OF THE MISSISSIPPI DEPARTMENT OF CORRECTIONS AND TO COMPLETE THE EIGHTEENTH DISTRICT CIRCUIT COURT’S COMMUNITY SERVICE PROGRAM IF RELEASED BEFORE SERVING THE FULL SENTENCE IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO JONES COUNTY.
 

 LEE AND MYERS, P.JJ., IRVING, GRIFFIS, BARNES, ISHEE, ROBERTS, CARLTON AND MAXWELL, JJ., CONCUR.
 

 [1]
 

 . Melvin’s last name was not stated in the record.