# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2015-KA-01702-SCT

*CORTAIA WASHINGTON*

*v.*

*STATE OF MISSISSIPPI*

| | |
|---|---|
| DATE OF JUDGMENT: | 09/23/2015 |
| TRIAL JUDGE: | HON. JEFF WEILL, SR. |
| COURT FROM WHICH APPEALED: | HINDS COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANT: | OFFICE OF THE STATE PUBLIC DEFENDER |
| | BY: MOLLIE MARIE McMILLIN |
| | MICHELE PURVIS HARRIS |
| | GEORGE T. HOLMES |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL |
| | BY: SCOTT STUART |
| DISTRICT ATTORNEY: | ROBERT SHULER SMITH |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 06/29/2017 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE RANDOLPH, P.J., COLEMAN AND MAXWELL, JJ.**

**COLEMAN, JUSTICE, FOR THE COURT:**

¶1.     Following a trial, a jury in the Hinds County Circuit Court, First Judicial District, found Cortaia Washington guilty of intimidating a witness in violation of Mississippi Code Section 97-9-55. The circuit court sentenced Washington to serve two years in the custody of the Mississippi Department of Corrections, with two months suspended and credit for time

served. The circuit court denied Washington's post-trial motions, and she appeals, challenging the weight of the evidence. Discerning no error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2. On March 21, 2012, Freda Austin testified as a State's witness in the trial of Cortez Washington, who later was found guilty of armed robbery. As she was testifying, Austin recognized a woman in the audience as a regular customer at the local store where she worked. The woman, later identified as Ashley Bryant, is Cortez Washington's aunt. Later the same day, an "angry" and "bothered" Bryant went to the store and asked to speak to Austin. Bryant was informed that Austin was not there because she had been testifying in court.

¶3. The following day, Bryant and Cortaia Washington, Cortez Washington's sister, returned to the store and asked the store manager if they could speak to Austin. The manager testified that she knew why the women were there and that they needed to leave; however, before she could get them to leave, Austin came from the back area where she had gone to get some pain reliever. Upon seeing Austin, Bryant started yelling at Austin about the case and her testimony. The store manager positioned herself between Austin and the two women, but Bryant was able to reach around her and hit Austin in the face. The store manager pushed Bryant away, and it was then that Washington took the opportunity to attack Austin. The testimony at trial was that Washington punched Austin several times and pulled out some of her hair. The incident lasted only a couple of minutes before Bryant and Washington left the store. Austin testified that she was not afraid at the time of the incident

because "it happened so fast. . . . [a]nd being afraid, probably, happened after the situation ended. But at the time I was protecting myself." Austin also testified that she believed the incident occurred only because she had testified at Cortez Washington's trial.

¶4. Bryant and Washington originally were tried together, but the jury was unable to reach a verdict. They were then tried separately. Prior to the second trial, the State and Washington moved the circuit court to enter an order of *nolle prosequi* in the case; however, the circuit court denied the motion based on the public interest in deterring the type of activities that occurred. For the same reason, the circuit court also did not accept a plea recommendation from the State. After deliberations, the jury returned a guilty verdict, finding that Washington's actions toward Austin violated Section 97-9-55. Washington filed a motion for a judgment notwithstanding the verdict, or alternatively, for a new trial, which the circuit court denied.

¶5. Washington appeals and raises the following issue for our review: whether the circuit court "erred in failing to grant the motion for [a] new trial as the verdict was against the overwhelming weight of the evidence."

**ANALYSIS**

¶6. A motion for a new trial is a challenge to the weight of the evidence; therefore, we review the circuit court's denial of a motion for a new trial using the abuse of discretion standard. ***Dilworth v. State***, 909 So. 2d 731, 737 (¶ 20) (Miss. 2005) (citing ***Howell v. State***, 860 So. 2d 704, 764 (¶ 212) (Miss. 2003)). The Court views the evidence in the light most favorable to the verdict and reverses only if the verdict is "so contrary to the overwhelming

weight of the evidence that to allow it to stand would sanction an unconscionable injustice."

***Bush v. State***, 895 So. 2d 836, 844 (¶¶ 18-19) (Miss. 2005).

¶7. According to Washington, the jury's verdict was against the overwhelming weight of the evidence because the "evidence shows only that Washington went to the store with her aunt" to ask "what Austin had gotten out of testifying against Cortez [Washington]." Washington further states that "[t]he testimony at trial shows that Washington went with her aunt to confront Austin about why she had testified, but nothing in the record suggests that they went to the store with the intent to retaliate against Austin or to threaten her." Washington also strenuously argues that she was just a bystander, who did not say anything to Austin and did not initiate the fight. She seems to justify her actions by claiming that she did not get involved until after the store manager had pushed Bryant: "There is no evidence that Washington's actions in joining the fight was [sic] in retaliation for Austin testifying against Cortez, rather than a reaction to her aunt being pushed at the beginning of the fight."

¶8. Washington's conviction is based on a violation of Mississippi Code Section 97-9-55 (Rev. 2014), which reads, in pertinent part, as follows:

> If any person . . . by threats, force or abuse, *attempt to intimidate* or otherwise influence a . . . witness . . . in the discharge of his duties, *or by such force, abuse or reprisals or threats thereof after the performance of such duties . . .* he shall, upon conviction, be punished by imprisonment not less than one (1) month in the county jail nor more than two (2) years in the state penitentiary or by a fine not exceeding five hundred dollars ($500.00), or both such fine and imprisonment.

(Emphasis added.) As explained above, Washington earnestly argues that her silence beforehand and her participation only after her aunt was pushed by the store manager

4

somehow obviates the evidence presented that she accompanied her aunt to Austin's place of employment with the specific intention to talk to Austin about the case and then ended up physically assaulting Austin the day after she had testified against Cortez Washington. Further, Washington's claim that her involvement in the fight was in response to her aunt being pushed does not hold much water, since it was the store manager, not Austin, who pushed Bryant. It does not follow that Washington would attack Austin when Austin was not the person who pushed Bryant.

¶9. Though Washington claims that she did not intend to intimidate or assault Austin when she went looking for her, "[i]ntent to do an act or commit a crime is also a question of fact to be gleaned by the jury from the facts shown in each case. The intent to commit a crime or to do an act by a free agent can be determined only by the act itself, surrounding circumstances, and expressions made by the actor with reference to his intent." *Shanklin v. State*, 290 So. 2d 625, 627 (Miss. 1974). The jury viewed the evidence surrounding the incident and determined that Washington had violated Section 97-9-55 by attempting to intimidate Austin when she sought out Austin, specifically about her testifying, and then assaulted Austin without any real justification, beyond the fact that Austin had testified against Cortez Washington the previous day. Her only connection to Austin is that Austin had testified against Cortez Washington. The jury's verdict is fully supported by the evidence; therefore, the jury verdict was not against the overwhelming weight of the evidence

## CONCLUSION

5

¶10. To summarize, the day after Austin testified against Washington's brother, Washington went with Bryant to Austin's place of employment with the intent to confront Austin about her testimony or what she "got" for testifying. Washington did not say anything to Austin; instead, she took an opportunity to physically assault Austin, a person she had never met until Cortez Washington's trial, when the store manager moved out of the way. The jury found that Washington's actions clearly fell within the ambit of Section 97-9-55. We agree and hold that the jury's verdict is not against the overwhelming weight of the evidence such that allowing the verdict to stand would sanction an unconscionable injustice. We affirm.

¶11. **AFFIRMED.**

**WALLER, C.J., DICKINSON AND RANDOLPH, P.JJ., KITCHENS, KING, MAXWELL, BEAM AND CHAMBERLIN, JJ., CONCUR.**