# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-KA-00189-COA

**RAHIM DIQUAN WILLIAMS A/K/A RAHIM WILLIAMS A/K/A RAHIM D. WILLIAMS A/K/A YP**

APPELLANT

v.

**STATE OF MISSISSIPPI**

APPELLEE

| | |
|---|---|
| DATE OF JUDGMENT: | 11/03/2017 |
| TRIAL JUDGE: | HON. WILLIAM E. CHAPMAN III |
| COURT FROM WHICH APPEALED: | MADISON COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | HEATHER MARIE ABY |
| ATTORNEY FOR APPELLEE: | OFFICE OF THE ATTORNEY GENERAL BY: SCOTT STUART |
| DISTRICT ATTORNEY: | MICHAEL GUEST |
| NATURE OF THE CASE: | CRIMINAL - FELONY |
| DISPOSITION: | AFFIRMED - 04/16/2019 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE BARNES, C.J., TINDELL AND McCARTY, JJ.**

**BARNES, C.J., FOR THE COURT:**

¶1. Rahim Williams was convicted of conspiracy to commit burglary and sentenced to five years in the custody of the Mississippi Department of Corrections (MDOC). He appeals his conviction, arguing that the verdict was against weight of the evidence. Finding no error, we affirm.

## FACTS AND PROCEDURAL HISTORY

¶2. Ashley Brown, Jessica Baugh, and Stephanie Mejia got off work at Last Call Sports Bar around 2:00 a.m. on Sunday, January 10, 2016, and went for drinks at a nearby club.

After a couple of drinks, Brown left and went to her and Baugh's apartment located at 110 Pine Knoll, Ridgeland, Mississippi. Baugh and Mejia went to Fairfield Inn to meet up with friends, including Baugh's male friend, Chris Jones. Baugh saw Mejia talking with a group of guys—she recognized one of them as Amonteel Pates. Baugh and Jones went back to her apartment early that morning and went to sleep. They left the door unlocked for Mejia because they had invited her to sleep there rather than drive home. Jones heard a noise, got up from bed, and saw three men in the living room. He noted they were holding a purse. When they saw him, they quickly left. When he woke up Baugh to tell her about the men, she ignored him, thinking Mejia was entertaining friends. However, when Brown left to go to work Sunday afternoon, she noticed that her keys, wallet, and car—an orange Dodge Charger—were missing. She soon discovered that her debit card had been used Sunday morning. Baugh's purse was also missing, including almost $300 in cash. They contacted the Ridgeland Police Department (RPD) and reported the stolen items. Baugh later discovered that her iPad mini had been taken as well.

¶3.    A blue baseball cap was recovered from the apartment. Jones told RPD he had seen Pates wearing that hat in a social media photo. RPD also found video evidence showing Pates buying Nike tennis shoes using Brown's debit card. Pates was arrested on Friday, January 15, and the police noticed two new pairs of Nike shoes inside the front door. Pates admitted to the officer that he had bought them with the stolen debit card. During his interview, Pates's story changed several times. He first claimed that he found the stolen debit card on the ground near his aunt's home in Jackson. When asked how his hat ended up in

2

Brown's and Baugh's apartment, Pates claimed he was set up. Eventually, Pates told RPD that he and four others—Williams, Fabiyonne Peel, Jontavian Eubanks, and Michael Tillman—had gone to Baugh's apartment and taken the credit cards and the car. The other four were later taken into custody. The iPad mini was found at Eubanks's home. When questioned by RPD about the burglary and auto theft, Williams denied involvement and claimed he had been at his sister's apartment near Tougaloo, Mississippi.

¶4. Williams, Tillman, Pates, Peel, and Eubanks were indicted for burglary, conspiracy to commit burglary, motor vehicle theft, and conspiracy to commit theft of a motor vehicle. The State later moved to amend the indictment to charge Williams as a habitual offender under Mississippi Code Annotated section 99-19-81 (Rev. 2015). The trials were bifurcated, and Williams's jury trial was held in Madison County Circuit Court on October 25-26, 2017.

¶5. Detective Adrien Ready testified at trial that the investigation first led RPD to Pates, who initially told several different lies regarding how he got the debit cards. When police went to Eubanks's home, Eubanks and Peel tried to hide. Detective Ready stated that during questioning, Williams "said he had nothing to do with Amonteel Pates . . . and he had absolutely no contact with him." However, he further noted that cell phone records showed that Williams and Pates talked with each other twenty-seven times on the night of the burglary and auto theft.

¶6. Tillman, an accomplice and Eubanks's cousin, testified that he broke into the apartment and took the Dodge Charger. He said that he and the other four men (Pates, Eubanks, Peel, and Williams) made plans at the Fairfield Inn to "go get the bag of money out

of the apartment." Tillman claimed that Williams ended up with the car.

¶7.     The cell phone records of Williams and his co-defendants were admitted into evidence. Charlie Rubisoff, an investigator with the Mississippi Attorney General's Office, testified that the phones for all five men were in the area of Baugh's apartment between 7:30–8:00 a.m. on January 10, 2016. Rubisoff also stated that the cell phone data reflected that Williams and Peel were near the Fairfield Inn around 4:00 a.m.

¶8.     Williams's sister testified that Williams had watched her children on January 9, while she was out, but she let him take her car to go out later that night because it was his birthday weekend. She claimed that when she got up at approximately 7:30 a.m. on Sunday, Williams was sleeping in her living room, and she found his cell phone in her car when she left to get breakfast.

¶9.     Williams testified that he was out that night for his birthday, going to house parties. He claimed for the first time that he had visited a "lady friend" in Ridgeland (whose home was near Baugh's apartment) and then went back to his sister's apartment around 8:00 a.m. Regarding the various phone calls, Williams said Pates was calling him to try find out where the parties were, which contradicted his statement to police that he had not talked to Pates. Williams could not explain why the phone records showed him making a phone call at 8:33 a.m. in the south Jackson area where Eubanks lived.

¶10.    Williams was acquitted of Counts I, III, and IV. He was found guilty and convicted on Count II, conspiracy to commit burglary, and the circuit court sentenced him as a non-violent habitual offender to five years in the custody of the MDOC without eligibility for

parole or probation. Williams filed a motion for a new trial, which the circuit court denied.

## DISCUSSION

¶11. Williams claims that the verdict is against the weight of the evidence, arguing the State failed to prove that Williams conspired with Pates, Peel, Eubanks, and Tillman to commit burglary. He contends that the fact he called and sent texts to the other defendants "is not enough" to find conspiracy. Williams also asserts that Detective Ready's testimony, which relied on Pates's statement to police, and Tillman's testimony were "not enough for the jury to return a verdict of conspiracy."

¶12. A circuit court's denial of a motion for a new trial, based on a challenge to the weight of the evidence, is reviewed for abuse of discretion. *Washington v. State*, 220 So. 3d 972, 973 (¶6) (Miss. 2017). We will "disturb the verdict only when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Little v. State*, 233 So. 3d 288, 289 (¶1) (Miss. 2017).

¶13. Although Williams told RPD that he had no contact with Pates, Detective Ready testified that cell phone records show he called Pates twenty-seven times the evening of the burglary. Baugh testified that she saw Pates at the Fairfield Inn with Mejia and that Mejia was talking with several guys she did not recognize. Rubisoff, the investigator, testified that the data records show that Williams's phone was near the Fairfield Inn around 4:00 a.m. (about the time that Baugh was there) and Williams and Peel had called one another. He further testified that all of the defendants' phones were near Baugh's apartment early that morning:

5

Q. The bottom line is all their cell phones were near the location of the theft, correct?

A. Correct.

. . . .

Q. And all their cell phones were near the location of the stolen iPad, Jontavian Eubanks', Juvie, house, correct?

A. Correct.

¶14. As to accomplice testimony, Tillman admitted that he had a plea agreement—he would plead to two of the four counts in exchange for testifying. Williams contends Tillman's accomplice testimony is to be viewed with caution. In general, "the uncorroborated testimony of an accomplice may be sufficient to convict an accused. This rule is inapplicable in those cases where the testimony is unreasonable, self contradictory or substantially impeached." *Osborne v. State*, 54 So. 3d 841, 846 (¶22) (Miss. 2011) (quoting *Ballenger v. State*, 667 So. 2d 1242, 1253 (Miss. 1995)). However, Tillman's testimony regarding communications with Williams and the others was corroborated by the cell phone records. Furthermore, the circuit court gave a cautionary jury instruction (Jury Instruction C-8), which stated:

> During the course of his testimony in this trial, the witness, Michael Tillman, claimed to have participated with the defendant in House Burglary, Conspiracy to Commit House Burglary, Motor Vehicle Theft, and Conspiracy to Commit Motor Vehicle Theft. Tillman is an admitted accomplice, and, as such, the jury should consider his testimony with great caution and suspicion. The jury is the sole judge of the credibility and the believability of all the witnesses, and it is for the jury to decide how much weight and worth, if any, to give the testimony of the witnesses, including Tillman. As you consider Tillman'[s] testimony, you may accept such portions, if any, that you deem credible, and reject such portions, if any, that you do not deem worthy of belief.

6

¶15. As the State summarized in its closing arguments: "You've heard Amonteel Pates'[s] statement. You've heard what Michael Tillman said. You have corroboration of their testimony through the cell phone records. And you have [Williams's] initial lie to the police, 'I don't mess with that boy [Pates].' He communicated with [Pates] 27 times that night." We find no abuse of discretion in the court's denial of Williams's motion for a new trial, and we affirm his conviction and sentence.

¶16. **AFFIRMED.**

**CARLTON AND J. WILSON, P.JJ., GREENLEE, WESTBROOKS, TINDELL, McDONALD, LAWRENCE, McCARTY AND C. WILSON, JJ., CONCUR.**