# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2018-KA-01261-COA

**BOBBY RAY ADAMS A/K/A BOBBY ADAMS**  APPELLANT

v.

**STATE OF MISSISSIPPI**  APPELLEE

DATE OF JUDGMENT:  08/14/2018
TRIAL JUDGE:  HON. SMITH MURPHEY
COURT FROM WHICH APPEALED:  DESOTO COUNTY CIRCUIT COURT
ATTORNEY FOR APPELLANT:  OFFICE OF STATE PUBLIC DEFENDER
 BY: JUSTIN TAYLOR COOK
ATTORNEY FOR APPELLEE:  OFFICE OF THE ATTORNEY GENERAL
 BY: BILLY L. GORE
DISTRICT ATTORNEY:  JOHN W. CHAMPION
NATURE OF THE CASE:  CRIMINAL - FELONY
DISPOSITION:  AFFIRMED - 02/18/2020
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE BARNES, C.J., GREENLEE AND McDONALD, JJ.**

**BARNES, C.J., FOR THE COURT:**

¶1.     A DeSoto County jury convicted Bobby Ray Adams of first-degree murder. The trial court sentenced him to life imprisonment in the custody of the Mississippi Department of Corrections. On appeal, Adams argues that the verdict is contrary to the weight of the evidence. Finding his argument without merit, we affirm his conviction and sentence.

## STATEMENT OF FACTS AND PROCEDURAL HISTORY

¶2.     Adams and Shareca Fair shared custody of their twelve-year-old son, Javen Fair. Adams lived in a house-trailer in Byhalia, Mississippi, and Shareca lived in Olive Branch, Mississippi. Adams and Fair never married or had a court-created custody agreement. The

child split time living with both parents, usually spending two days per week and every other weekend with Adams. The rest of the time was spent with Shareca in Olive Branch. This arrangement worked until the summer of 2016, when Adams started preventing Shareca from seeing Javen during the usual summer visitation and interfering with school preparations. In August 2016, when Adams refused to allow Javen to go home with Shareca, she filed a complaint to obtain sole legal and physical custody of Javen and only limited, supervised visitation rights for Adams. In November 2016, a chancellor granted Shareca's custody request, and visitation rights for Adams were to be "determined by [Shareca]." About two weeks later, with the order in hand, Shareca went to Adams's trailer to take custody of Javen.

¶3. On that day, December 19, 2016, Adams's neighbor across the street, Dorothy Boyce, testified that in the late afternoon, while watching television, she heard three gunshots. She looked out her window and saw Adams walking down the road with Javen, who was hesitant to go. Boyce thought Adams took Javen to his cousin's house down the road. A short time later, Adams came running back and went to Shareca's vehicle which was in his driveway. He shoved her body over so he could fit in her driver's seat, and he drove the vehicle behind his trailer.

¶4. When law enforcement arrived on the scene, Adams surrendered. Police found a disassembled .22-caliber rifle in plain view on the floor of the trailer's main room, and an empty box of .22-caliber ammunition was on the kitchen countertop. They also found Shareca's body in her vehicle behind the trailer.

2

¶5. Adams was indicted for first-degree murder. At trial, nine witnesses testified for the State, including Javen. On the afternoon of December 19, 2016, Javen was in his father's trailer waiting for his mother to pick him up. Looking out a window, Javen saw his mother pull up in the driveway. His father went outside to his mother's vehicle, and they began arguing. He could not hear what they were saying, and his mother never got out of the vehicle. Adams came inside and told Javen to go to the bedroom. Javen testified that Adams got his gun from the closet. Javen then heard gunshots, and his father returned inside. Adams told Javen to come outside. As they exited the trailer, Adams told Javen, "[D]on't look." However, Javen did look, and he saw his mother's dead body in the driver's seat of her vehicle. Her head was resting on the steering wheel. Adams took Javen to a relative's house down the street. Javen also identified in court the rifle he saw his father retrieve from the closet.

¶6. Dr. Mark Levaughn, a forensic pathologist and the Chief Medical Examiner of Mississippi, also testified for the State. During Shareca's autopsy, nine projectiles were recovered from her body. He observed numerous gunshot wounds to the left side of Shareca's body, penetrating her neck, heart, lungs, and chest. Additionally, there was one contact wound to the left side of her forehead, and a bullet was recovered from her brain. There was also evidence of defensive posturing indicative of someone who is "conscious of an oncoming assault." He determined the cause of death to be multiple gunshot wounds and the manner of death, homicide.

¶7. A forensic scientist from the Mississippi Forensics Laboratory testified that both the

palms and backs of Adams's hands had particles indicative of gunshot residue. Additionally, the shell casings recovered from the scene were fired from the .22-caliber rifle found on Adams's kitchen floor.

¶8.   The defense rested without presenting any witnesses.  The jury was instructed on first-degree "deliberate-design" murder, the lesser-included offense of "heat-of-passion" manslaughter, and the circumstantial-evidence standard.  After deliberation, the jury found Adams guilty of first-degree murder.  Adams filed a post-trial motion for a new trial, which was denied.

## ANALYSIS

¶9.   Adams raises one issue on appeal—that the verdict was contrary to the weight of the evidence because he lacked the requisite intent for deliberate-design murder.  Adams therefore requests this Court reverse his conviction and remand the case pursuant to the direct-remand rule[1] for a conviction under the lesser-included offense of heat-of-passion manslaughter.

¶10.   "A motion for [a] new trial challenges the weight of the evidence." *Dilworth v. State*, 909 So. 2d 731, 736 (¶20) (Miss. 2005).  "A reversal is warranted only if the lower court abused its discretion in denying a motion for a new trial." *Id.* (quoting *Howell v. State*, 860 So. 2d 704, 764 (¶212) (Miss. 2003)).  The reviewing court must "weigh the evidence in the light most favorable to the verdict." *Little v. State*, 233 So. 3d 288, 292 (¶21) (Miss. 2017).

---

[1] The direct-demand rule allows a case to be remanded for sentencing on a lesser-included offense without a new trial when the greater offense is "invalidated on appeal for want of sufficiency of the evidence," and proof of the lesser offense is established. *Shields v. State*, 722 So. 2d 584, 585 (¶7) (Miss. 1998).

The verdict will only be disturbed "when it is so contrary to the overwhelming weight of the evidence that to allow it to stand would sanction an unconscionable injustice." *Id.*

¶11. To prove first-degree murder, the State must show that a person was killed "without the authority of law" and that the killing was "done with the deliberate design to effect the death of the person killed . . . ." Miss. Code Ann. § 97-3-19(1)(a) (Rev. 2014). The Mississippi Supreme Court has defined the term "deliberate design," stating that "'deliberate' always indicates full awareness of what one is doing, and generally implies careful and unhurried consideration of the consequences. 'Design' means to calculate, plan, contemplate . . . ." *Jones v. State*, 39 So. 3d 860, 865-66 (¶32) (Miss. 2010) (quoting *Gossett v. State*, 660 So. 2d 1285, 1293 (Miss. 1995)). However, "deliberate design to kill a person may be formed very quickly, and perhaps only moments before the act of consummating the intent." *Id.* at 866 (¶32). "[I]ntent . . . to commit a crime is . . . a question of fact to be gleaned by the jury from the facts shown in each case." *Washington v. State*, 220 So. 3d 972, 974 (¶9) (Miss. 2017) (quoting *Shanklin v. State*, 290 So. 2d 625, 627 (Miss. 1974)). Intent is demonstrated "by the act itself, surrounding circumstances, and expressions made by the actor with reference to his intent." *Id.*

¶12. Alternatively, manslaughter is a killing "without malice," committed in "the heat of passion[.]" Miss. Code Ann. § 97-3-35 (Rev. 2014). "Heat of passion" is defined as

> [a] state of violent and uncontrollable rage engendered by a blow or certain other provocation given, which will reduce a homicide from the grade of murder to that of manslaughter. Passion or anger suddenly aroused at the time by some immediate and reasonable provocation, by words or acts of one at the time. The term includes an emotional state of mind characterized by anger, rage, hatred, furious resentment or terror.

5

*Phillips v. State*, 794 So. 2d 1034, 1037 (¶9) (Miss. 2001) (quoting *Agnew v. State*, 783 So. 2d 699, 703 (¶14) (Miss. 2001)). This passion could be "brought about by some insult, provocation, or injury . . . ." *Id.* at (¶10) (citing *Graham v. State*, 582 So. 2d 1014, 1018 (Miss. 1991)).

¶13. Here, Adams claims the prospect of losing custody of his son produced a heightened emotional state of anger and rage; therefore, the killing did not rise to the level of deliberate-design intent but was instead indicative of heat-of-passion manslaughter. He states that shooting Shareca numerous times supports this state of rage.

¶14. We disagree. "Whether a homicide is classified as a murder or manslaughter is ordinarily an inquiry to be made by the jury." *Moore v. State*, 52 So. 3d 339, 347 (¶32) (Miss. 2010) (quoting *Hodge v. State*, 823 So. 2d 1162, 1166 (¶16) (Miss. 2002)). The jury was instructed on both murder and manslaughter. Viewing the evidence in the light most favorable to the verdict, the jury could find beyond a reasonable doubt, and to the exclusion of every reasonable hypothesis consistent with innocence, that Adams's actions and the surrounding circumstances were indicative of first-degree, deliberate-design murder.

¶15. After the couple began arguing, Javen saw his father take the time to walk back to the trailer and retrieve a gun from the closet, while Shareca stayed in her vehicle. Adams instructed Javen to go to his bedroom. Adams shot Shareca numerous times; then returned to the trailer, got Javen, and walked him past his mother's dead body while telling him "don't look." After taking Javen to a relative's house, Adams returned to the scene, shoved Shareca's body out of the way, sat in the driver's seat, and drove her vehicle behind his

trailer. By all accounts, a jury could find that Adams was aware of his methodical actions, even if he were upset about the new custody arrangement. Photographs of the inside of Adams's trailer show his affection for Javen—his son's photographs, certificates, and awards decorated the walls. Even so, this fact does not preclude Adams from having the necessary intent for first degree, deliberate-design murder.

¶16. Viewing the evidence in the light most favorable to the verdict, we cannot say the trial court abused its discretion in denying Adams's motion for a new trial. Here, the verdict of guilt for first-degree murder does not sanction an unconscionable injustice. Accordingly, we affirm Adams's conviction and sentence.

¶17. **AFFIRMED.**

**CARLTON AND J. WILSON, P.JJ., GREENLEE, WESTBROOKS, TINDELL, McDONALD, LAWRENCE, McCARTY AND C. WILSON, JJ., CONCUR.**

7